UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANDREW U. D. STRAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:15-cv-01015-RLY-DKL |
| | ) | |
| INDIANA SUPREME COURT, | ) | |
| BRENDA FRANKLIN RODEHEFFER, | ) | |
| LILIA GEORGIV JUDSON, | ) | |
| KEVIN SEAN SMITH, and U.S. EQUAL | ) | |
| OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON MOTIONS TO DISMISS**

Plaintiff, Andrew U. D. Straw, proceeding *pro se*, filed a 61-page Second

Amended Complaint ("SAC") seeking monetary and injunctive relief against the Indiana

Supreme Court, and three of its employees, Brenda Franklin Rodeheffer, Lilia Georgiev

Judson, and Kevin Sean Smith ("State Defendants").  Plaintiff alleges the State

Defendants violated Title I, Title II, and Title V of the Americans with Disabilities Act

("ADA") (Count I), and that they violated his rights to free speech and equal protection

under the First and Fourteenth Amendments to the United States Constitution (Count II).

Plaintiff also seeks monetary damages from the Equal Employment Opportunity

Commission ("EEOC"), alleging the EEOC violated his Fifth Amendment right to due

process.  Both the State Defendants and the EEOC move to dismiss Plaintiff's SAC.

Having read and reviewed the parties' submissions and the applicable law, the court finds the State Defendants' and the EEOC's motions to dismiss should be **GRANTED**.

## I.    Background

Plaintiff graduated from the Indiana University-Mauer School of Law in approximately 1998.  (SAC ¶¶ 11, 14).  Plaintiff suffers from both physical and mental disabilities.  His physical disabilities arose from a head-on vehicular accident in 2001; and his mental disability, bipolar disorder, arose in approximately 1998 following the death of his mother.  (*Id*. ¶¶ 11, 27).  Since that time, Plaintiff has been hospitalized for bipolar disorder ten times.  (*Id*. ¶ 11).

Following graduation from law school, Plaintiff was admitted to practice law in Virginia and worked there until he moved back to Indiana in the summer of 2000.  (*Id*. ¶¶ 17-25, 56).  In August of 2000, Plaintiff was hired by Ms. Judson, Executive Director of the Indiana Supreme Court's Division of State Court Administration ("STAD"), as a Statistical Analyst.  (*Id*. ¶ 26 and Ex. J).

In November 2001, Plaintiff applied to take the Indiana Bar Exam.  (*Id*. ¶ 45).  As part of the application, Plaintiff disclosed that he had bipolar disorder.  (*Id*.).  He took the Bar Exam in February 2002 and passed.  (*Id*. ¶¶ 55-56).  Due to his mental disability, however, the Indiana State Board of Law Examiners informed him he would receive "Conditional Admission" to the practice of law if he signed a Consent Agreement.  (*Id*. ¶ 58 and Ex. W).   The Consent Agreement required Plaintiff to submit quarterly statements from his psychiatrist and therapist establishing that his bipolar disorder was being successfully managed.  (*Id*.).  The Consent Agreement lasted a minimum of two

2

years, at which time the Board would decide whether to remove those conditions and admit him unconditionally to practice law.  (*Id*.).  Plaintiff alleged that Conditional Admission to the practice of law was so upsetting that on the night of his swearing in, he called his doctor who ordered he be off work for four weeks.  (*Id*. ¶ 60).  Plaintiff alleges that when he returned to work in July 2002, Ms. Judson fired him.  (*Id*. ¶ 61).

In 2003, Plaintiff moved to New Zealand with his then wife.  (*Id*. ¶ 67).  He returned to Indiana in 2010.  (*Id*.).

On March 4, 2014, Plaintiff asked the STAD to hire him "to address the disability rights matters [he] had experienced."  (*Id*. ¶ 73).  However, the Director of Employment Law Services for STAD, Ms. Rodeheffer, informed him that no position was available. (*Id*. ¶ 73 and Ex. V).

On August 15, 2014, Plaintiff filed a Petition for Redress of Grievances because he felt his constitutional and human rights had been violated by the Indiana Supreme Court over a long period of time.  (*Id*. ¶ 74 and Ex. Z).  In the Petition, he stated that the Court engaged in disability-based discrimination in the bar application process and during his time as an employee of the STAD.  (*Id.* Ex. Z at 1).  The Clerk of the Indiana Supreme Court, Mr. Smith, notified Plaintiff by letter that the Plaintiff's Petition was not a case or controversy within the Supreme Court's jurisdiction and therefore, the Court would not be taking any action on the matter.  (*Id*. ¶ 75 and Ex. AA).  After Plaintiff submitted the Petition again, Mr. Smith referred the Petition to Ms. Rodeheffer.  (*Id*. ¶ 77).  She responded to Plaintiff by email on September 19, 2014, explaining the State

Defendants' position that Plaintiff did not have any valid claims against them.  (*Id.* ¶ 77 and Ex. CC).

On September 3, 2014, Ms. Rodeheffer filed a disciplinary complaint against Plaintiff with the Indiana Supreme Court Disciplinary Commission stating that Plaintiff's "mental health problems have become sufficiently severe that I believe he is not competent to practice law."  (*Id.* ¶ 80).  She noted that Plaintiff had "filed multiple lawsuits in the last month that are nonsensical," including, but not limited to, a Complaint against fifty law schools asking for "the disability statistics of law school classes," the Petition for Redress with the Indiana Supreme Court, and a lawsuit instituted by Plaintiff against his former client and her attorney after the former client sued him for malpractice (referenced as *Straw v. Sconiers* in the designated materials attached to the SAC).  (*Id.* Ex. EE and ¶ 109).

Around this time period, Plaintiff filed a complaint with the Indiana Civil Rights Commission ("ICRC") complaining that the Indiana Democratic Party Headquarters in South Bend, Indiana, were not handicap-accessible.  (*Id.* ¶ 132).  Plaintiff alleges the ICRC "refused to enforce the law" because disabled people could "park across the street."  (*Id.* ¶ 133).  The ICRC issued a No Probable Cause finding in 2013.  (*Id.* ¶ 134). At some point, Plaintiff filed a lawsuit against the Indiana Democratic Party entitled *Straw v. Indiana Democratic Party*.[1]  The court presumes that he lost at least at the

---

[1] Plaintiff did not allege when or where he filed the lawsuit and did not provide a cause number for the same.

appellate level, because he filed a request for transfer to the Indiana Supreme Court on September 3, 2014.   (*Id*. ¶ 137).

The State Defendants assert, and the Plaintiff does not deny, that he filed his charge of discrimination with the EEOC on December 4, 2014 against the State Defendants for their "actions as an ex-employer . . . based on violations of the Civil Rights Act of 1964, Title VII, and the [ADA]."  (*Id*. ¶ 155).  Plaintiff received a Notice of Right to Sue from the EEOC on March 31, 2015.  (*Id*. ¶ 155 and Ex. WW).  The Notice stated that "the EEOC is unable to conclude that the information obtained establishes violations of the statutes."  (*Id*., Ex. WW).

On February 27, 2015, the Indiana Supreme Court denied Plaintiff's request for transfer in *Straw v. Indiana Democratic Party*, 93A02-1406-EX-399 (Ind.).

Plaintiff filed the present action on June 28, 2015, seeking over $30 million from the State Defendants and $10 million from the EEOC.  In Count I of the SAC, Plaintiff alleges the State Defendants violated Title I, Title II, and Title V of the ADA, and in Count II, he alleges the State Defendants violated his First Amendment right to petition the government for redress of grievances, and violated his Fourteenth Amendment right to equal protection.  In Count III, Plaintiff alleges the EEOC violated the Fifth Amendment by failing to conduct an investigation into his charges of discrimination against the State Defendants.  Plaintiff's constitutional tort claims are brought under 42 U.S.C. § 1983 ("Section 1983").  In addition to monetary damages, Plaintiff seeks injunctive relief; in particular, he asks the court to order that his "employment file be destroyed at the Indiana Supreme Court and replaced with a document from the Chief

Justice stating that [his] work ***and sacrifice*** for the Indiana Supreme Court and the State

of Indiana were exemplary and a positive model that helped all Hoosiers . . . ."  (*Id.* ¶

148) (emphasis in original).

On September 14, 2015, the State Defendants filed a Motion to Dismiss Plaintiff's

Second Amended Complaint.  Two weeks later, the EEOC also filed a Motion to Dismiss

the Second Amended Complaint.  Both motions are brought under Rules 12(b)(1) for lack

of subject matter jurisdiction, 12(b)(5) for insufficiency of service of process, and

12(b)(6) for failure to state a claim, and are fully briefed.  On November 16, 2015,

Plaintiff filed a Motion for Leave to file a Third Amended Complaint.  The Magistrate

Judge denied that Motion, finding the amendment would be futile.  (Filing No. 51).  The

Magistrate Judge also analyzed whether the Second Amended Complaint could withstand

a motion to dismiss.  She concluded that it could not.

## II.    Standard of Review

The Seventh Circuit considers Eleventh Amendment immunity to be a

jurisdictional bar.  *See Crosetto v. State Bar of Wisconsin*, 12 F.3d 1396, 1401 & n.8 (7th

Cir. 1993), *cert. denied*, 511 U.S. 1129 (1994).  "When considering a motion to dismiss

under Rule 12(b)(1), the district court may properly look beyond the jurisdictional

allegations of the complaint and view whatever evidence has been submitted on the issue

to determine whether in fact subject matter jurisdiction exists."  *Estate v. Eiteljorg ex.*

*Rel. Eiteljorg v. Eiteljorg*, 813 F. Supp. 2d 1069, 1074 (S.D. Ind. 2011) (quoting *Capitol*

*Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993)).  In resolving the motion, the

court accepts the well-pleaded allegations from the complaint as true and draws all

reasonable inferences in the plaintiff's favor. *Id*. (citing *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002)).

Federal Rule of Civil Procedure 12(b)(5) permits a party to seek dismissal of a matter based upon insufficiency of process. When a defendant challenges the sufficiency of service, the plaintiff bears the burden of demonstrating that proper service occurred. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). In determining whether service was effective, the court may consider affidavits and other documentary evidence. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003).

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of claims for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss is to test the legal sufficiency of the complaint, not the merits of the lawsuit. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). A court may grant a Rule 12(b)(6) motion to dismiss only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint sufficient on its face need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id*. at 555. The court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir. 1990).

In addition to the allegations of the complaint, the court may consider "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing cases). Here, Plaintiff attached to his SAC 57 exhibits. Because they are central to his SAC and are referenced in it, the court will consider them for purposes of the motions to dismiss.

## III.   Discussion

The court will begin with the State Defendants' motion to dismiss.

### A.   Service of Process

The State Defendants first assert that Plaintiff has insufficient service of process on them. Pursuant to Rules 4(e)(1) and 4(j)(2) of the Federal Rules of Civil Procedure, the court applies the Indiana Rules of Trial Procedure in determining whether service was proper. Indiana Trial Rule 4.1 provides:

> (A)  Service may be made upon an individual, or an individual acting in a representative capacity, by:
>
> (1) sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgment of receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter . . . .

Ind. T.R. 4.1(A)(1). Indiana Trial Rule 4.6 provides for service on a governmental organization "upon the executive officer thereof and also upon the Attorney General." Ind. T.R. 4.6(A)(2). "Indiana Trial Rules 4.1 and 4.6 combine to allow the use of certified mail to serve an individual that is part of a governmental organization by

mailing the documents to his or her place of business or employment with return receipt requested." *Moreno-Avalos v. City Hall of Hammond, Ind.*, No. 2:13-CV-347-TLS, 2014 WL 3894349, at *2 (N.D. Ind. Aug. 8, 2014) (citing Ind. T.R. 4.1(A)(1) & 4.6(A)-(B)).

In this case, Plaintiff filed proof of service of the summons and complaint by certified mail.  (Filing Nos. 11-13).  Based on what he has produced, his proof of service is insufficient, however, because a written acknowledgement of receipt was not requested and not returned pursuant to Indiana Trial Rule 4.1.  In addition, Plaintiff served copies for the Indiana Supreme Court and the Attorney General on the Governor's Office.  The service of process on the State Defendants was, therefore, insufficient.

**B.      Count I Against the State Defendants**

In Count I, Plaintiff alleges the State Defendants violated Titles I, II, and V of the ADA.

**1.      Title I of the ADA**

Title I of the ADA states:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112.  As an initial matter, this claim may only be brought against the individual State Defendants.  Suits brought by state employees seeking money damages against the state for violations of Title I of the ADA are barred by the Eleventh Amendment.  *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001).

Accordingly, Plaintiff's Title I claim against the Indiana Supreme Court is barred to the extent Plaintiff seeks monetary damages.

In addition, an EEOC charge must be filed within 300 days of the allegedly unlawful employment practice, or the plaintiff's claim is barred. *Flannery v. Recording Indus. Ass'n. of Am.*, 354 F.3d 632, 637 (7th Cir. 2004). "[W]hile not a jurisdictional element, it is a prerequisite with which a plaintiff must comply before filing suit." *Graham v. AT&T Mobility, LLC*, 247 Fed. Appx. 26, 29 (7th Cir. 2007). Here, Plaintiff filed his charge of discrimination on December 4, 2014, and his Complaint on June 28, 2015. Therefore, his claims arising from incidents alleged before February 7, 2014, are time-barred, leaving only his Title I failure-to-hire claim, which accrued in March 2014, for the court's consideration. (*See* SAC, Ex. V).

To state a claim for failure-to-hire, a plaintiff need only allege that "he was turned down for a job because of his disability." *Dixon v. The CMS*, No. 14 C 4986, 2015 WL 6701771, at *2 (N.D. Ill. Nov. 3, 2015) (citing *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014)). Job, in this context, means an open position. *See Grigsby v. LaHood*, 628 F.3d 354, 358 (7th Cir. 2010) (listing the prima facie elements of a failure-to-hire case).

Ms. Rodeheffer's letter to Plaintiff, which is attached to the SAC as Exhibit V, states, in relevant part:

> We understand that you are seeking a position or contract to establish a disability rights office for the Indiana Supreme Court. Thank you for your interest but we are not seeking such a position at this time.

(SAC, Ex. V).  Ms. Rodeheffer responded further by email that she was the person

holding a position similar to the position sought by Plaintiff and that the Court already

had an ADA coordinator.  (*Id*., Ex. CC).  Because Plaintiff did not apply for an open

position, his failure-to-hire claim fails to state a claim for which relief can be granted.

### 2.    Title V of the ADA

Title V of the ADA provides:  "[N]o person shall discriminate against any

individual because such individual has opposed any act or practice made unlawful by this

chapter or because such individual made a charge . . . under this chapter."  42 U.S.C. §

12203.  Plaintiff bases this retaliation claim on two discrete acts:  (1) the disciplinary

complaint filed by Ms. Rodeheffer in September 2014 and (2) the Indiana Supreme

Court's denial of transfer in his disability rights case against the Indiana Democratic

Party in February 2015.  (SAC ¶ 139).  The retaliation provision of the ADA does not

provide for individual liability.  *Spiegel v. Schulmann*, 604 F.3d 72, 79 (7th Cir. 2010).

Therefore, this claim is analyzed solely against the Indiana Supreme Court.

"The ADA prohibits employers from retaliating against employees who assert

their right under the Act to be free from discrimination."  *Dickerson v. Bd. of Trs. of

Cmty. College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) (citing 42 U.S.C. §

12203(a)).  To state a claim for retaliation under the ADA, a plaintiff must allege that he

engaged in protected expression and was subjected to an adverse action as a result of that

activity.  *Carlson*, 758 F.3d at 828 (quoting *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d

1014, 1029 (7th Cir. 2013)).  Conduct is "materially adverse" if it would have "dissuaded

a reasonable worker from making or supporting a charge of discrimination."[2]  *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citations omitted).

Here, Plaintiff alleges Ms. Rodeheffer filed the disciplinary complaint against him in retaliation for his "disability rights work and his demands for justice."  (SAC ¶ 139).  This claim appears to be based on Plaintiff's Petition for Redress of Grievances, which he alleges he "filed" five days before Ms. Rodeheffer filed the disciplinary complaint against him.  (*Id*. ¶ 80).  Plaintiff's allegations reflect, however, that Mr. Smith "refused" to accept the Petition for filing.  (*Id*. ¶ 75).  In fact, Mr. Smith returned the Petition to Plaintiff.  (*Id.*, Ex. AA).  When he attempted to file the Petition for Redress again, Mr. Smith forwarded the Petition to Ms. Rodeheffer because Plaintiff made allegations of discrimination against the Court.  (*Id.*, Ex. BB).  Still, Ms. Rodeheffer was aware of the Petition, as it is listed as one of the documents in support of her disciplinary complaint.  (*See id.*, Ex. EE).

The overarching problem with Plaintiff's ADA retaliation claim is this:  the events giving rise to this claim – the Petition for Redress of Grievances and the disciplinary complaint – occurred in September 2014.  Plaintiff was last employed with the STAD in 2002.  There is no employer-employee relationship at issue here.  And while post-

---

[2] *Burlington Northern* is a Title VII retaliation case.  The anti-retaliation provision of the ADA, 42 U.S.C. § 12203(a), uses similar language to that in Title VII, 42 U.S.C. § 2000e-3(a).  Title VII retaliation cases therefore provide guidance for the assessment of ADA retaliation claims. *See Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009).

termination acts of retaliation that have a nexus to employment are actionable, *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 888-91 (7th Cir. 1996), this is not that case.  It is simply not plausible that Ms. Rodeheffer would retaliate against Plaintiff for attempting to file the Petition which covers incidents that occurred in 2002.

Plaintiff also appears to claim that Ms. Rodeheffer's disciplinary complaint was filed in retaliation for Plaintiff's ICRC complaint alleging that the Indiana Democratic Party Headquarters in South Bend did not provide handicap parking.  (*Id.* ¶ 132).  Again, there is no employer-employee relationship here.  Furthermore, Plaintiff fails to allege that Ms. Rodeheffer was even aware of Plaintiff's ICRC complaint.  *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004) (stating supervisors must know of employee's complaints for their decisions to be retaliatory).  Therefore, Plaintiff fails to establish a claim for relief under the anti-retaliation provision of the ADA.

### 3.     Title II of the ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To establish a violation of Title II, a plaintiff must show: "'(1) that he is a 'qualified individual with a disability,' (2) that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and (3) that the denial or discrimination was 'by reason of' his disability.'"  *Phipps v. Sheriff of Cook Cnty.*, 681 F. Supp. 2d 899, 913 (N.D. Ill. 2009) (quoting *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir.

1996)).  Although the ADA does not define "services, programs, or activities," courts have adopted the definition of "programs or services" from the Rehabilitation Act to include "all of the operations of . . . a local government."  *Frame v. City of Arlington*, 657 F.3d 215, 225 (5th Cir. 2011), *cert. denied*, 132 S.Ct. 1561 (2012); *see also Brumfield v. City of Chicago*, 735 F.3d 619, 622 (7th Cir. 2013) ("Title II provides that state and local governments may not exclude eligible disabled persons from 'participation in' or 'the benefits of' governmental 'services, programs, or activities' or otherwise 'subject[]' an eligible disabled person 'to discrimination.'") (quoting 42 U.S.C. § 12132)).

Neither Plaintiff's SAC nor his Response explicitly discusses a Title II violation. The court presumes his claim is based upon either his lawsuit against the Indiana Democratic Party and/or his Petition for Redress of Grievances.  With respect to his lawsuit against the Democratic Party, the allegations of Plaintiff's SAC reflect that Plaintiff was not denied access to the courts.  He filed his lawsuit and even sought transfer to the Indiana Supreme Court.  Therefore, Plaintiff's claim based on his lawsuit with the Democratic Party fails to state a claim upon which relief may be granted.

With respect to his Petition for Redress of Grievances, Plaintiff's allegations reflect Mr. Smith "refused" to file the Petition with the Indiana Supreme Court because Plaintiff's Petition did not fall within the jurisdiction of the Court.  (SAC, Exs. AA & BB).  Mr. Smith did forward the Petition to Ms. Rodeheffer for her review since he alleged discrimination against the Indiana Supreme Court.  (*Id.*, Ex. CC).  Ms. Rodeheffer responded by explaining why his claims were untimely and lacked merit.

14

Plaintiff fails to state a claim that his Petition for Redress was denied because of his disability.

### C.     Count II Against the State Defendants

In Count II, Plaintiff brings Section 1983 claims under the First Amendment, and the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment. Plaintiff's claims against the Indiana Supreme Court and the individual State Defendants sued in their official capacities must be dismissed, as they are not "persons" within the meaning of Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Furthermore, the Eleventh Amendment bars suits for damages against state officials in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). The court therefore treats this claim as against Mr. Smith and Ms. Rodeheffer in their individual capacities.

Plaintiff alleges that Mr. Smith and Ms. Rodeheffer violated his First Amendment right to petition the government for redress of grievances. This right includes the right of access to the courts. *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)). For the reasons just explained, Plaintiff was not denied access to the court when Mr. Smith "refused" to file his Petition for Redress of Grievances. In addition, neither Mr. Smith nor Ms. Rodeheffer prevented Plaintiff from pursuing his claims in another forum as evidenced by the filing of his lawsuit.

Plaintiff also alleges Mr. Smith and Ms. Rodeheffer violated his right to due process due to the Indiana Supreme Court's "repeated refusal to accept [his] demands for justice." (SAC ¶ 149). Plaintiff further alleges that he was discriminated against in violation of the Equal Protection Clause because "what the Indiana Supreme Court and its employees did is the epitome of discrimination and intentional harm." (*Id*. ¶ 150). To the extent these claims are based on his Petition for Redress of Grievances, Plaintiff was not denied due process nor equal protection. Plaintiff simply attempted to file the Petition in the wrong forum. To the extent Plaintiff's claims are based on his employment with the STAD and his bar applications, his claims are barred by the two-year statute of limitations applicable to Section 1983 actions in this state. *Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005) (noting the statute of limitations for Section 1983 actions in Indiana is Indiana's two-year statute of limitations applicable to personal injury actions).

### D.    Count III Against the EEOC

Plaintiff alleges the EEOC violated his Fifth Amendment right to due process by failing to perform an investigation of his charges of discrimination against the State Defendants. According to Plaintiff, the EEOC provided him a copy of his charge file, but his charge file contained only the documents that he submitted; there were no documents from the State Defendants. (SAC ¶ 158). Citing the Code of Federal Regulations, Plaintiff argues the EEOC is required to conduct an investigation and he had a right to an investigation, "not just a letter of right to sue." (*Id.* ¶ 162).

To begin, the court lacks subject matter jurisdiction over Plaintiff's Fifth Amendment claim for money damages against the EEOC.  *See FDIC v. Meyer*, 510 U.S. 471, 485-86 (1994).  In addition, as found by the Magistrate Judge, the regulation Plaintiff alleges the EEOC violated, 29 C.F.R. § 1601.15(a), does not confer jurisdiction on the court.  (Filing No. 51 at 9).

Turning to the merits, Plaintiff's claim fails to state a claim of a deprivation of due process in violation of the Fifth Amendment.

> It is well established that a private-sector employee has no cause of action against the EEOC for its failure to process a charge of discrimination.  The proper course for a private plaintiff whose claim the EEOC [allegedly] mishandled is to bring a lawsuit against the plaintiff's employer on the merits, not one against the EEOC.

*Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000) (internal citations omitted).  And, as argued by the EEOC, it was not properly served pursuant to Federal Rule of Civil Procedure 4(i).[3]

## IV.   Conclusion

For the reasons set forth above, the court **GRANTS** the State Defendants' Motion to Dismiss (Filing No. 23) and **GRANTS** the EEOC's Motion to Dismiss (Filing No. 29).

**SO ORDERED** this 28th day of January 2016.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

---

[3] In the court's Entry on Plaintiff's Request for Clerk to Enter Default Against the EEOC, the court found the EEOC was not properly served.  (*See* Filing No. 49).

Distributed Electronically to Registered Counsel of Record.

Distribution via U.S. Mail to:

Andrew U.D. Straw
1900 E. Golf Rd., Suite 950A
Schaumburgh, IL  60173